STEVEN H. FELDERSTEIN, State Bar No. 056978
THOMAS A. WILLOUGHBY, State Bar No. 137597
JASON E. RIOS, State Bar No. 190086
FELDERSTEIN FITZGERALD WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1450
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435

Attorneys for The Official Committee of Unsecured Creditors

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>HELLER EHRMAN LLP,<br><br>Debtor.<br><br>HELLER EHRMAN LLP BY AND THROUGH ITS AUTHORIZED REPRESENTATIVE, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS of HELLER EHRMAN LLP,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A. and CITBANK, N.A.,<br><br>Defendants. | CASE NO.: 08-32514<br><br>Chapter 11<br><br>Adv. Proc. No.<br><br>**COMPLAINT: (1) TO AVOID AND RECOVER PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 AND 550; (2) TO AVOID SECURITY INTERESTS; (3) FOR TURNOVER OF PROPERTY TO THE ESTATE PURSUANT TO 11 U.S.C. § 542; (4) FOR AVOIDANCE, TURNOVER, AND RECOVERY OF POSTPETITION TRANSFERS; AND (5) TO DISALLOW ANY CLAIM BY DEFENDANTS IN THE HELLER EHRMAN LLP ESTATE PURSUANT TO 11 U.S.C. § 502(d)** |

The Bankruptcy Estate of Heller Ehrman LLP, a California limited liability partnership, (the "Debtor"), by and through its authorized representative, The Official Committee of Unsecured Creditors, plaintiff herein ("Plaintiff" or the "Committee"), for its Complaint: (1) to Avoid and Recover Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550; (2) to Avoid Security Interests; (3) for Turnover of Property to the Estate Pursuant to 11 U.S.C. § 542; (4) for Avoidance, Turnover, and Recovery of Postpetition Transfers; and (5) to Disallow Any Claim By Defendants in

the Heller Ehrman LLP Estate Pursuant to 11 U.S.C. § 502(d), alleges as follows against Bank of America, N.A ("BOA") and Citibank N.A. ("Citibank").

**JURISDICTION AND VENUE**

1. This action is brought pursuant to Rule 7001 et seq. of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to seek relief in accordance with 11 U.S.C. §§ 105, 502, 542, 544, 545, 547, 549, and 550 and other applicable law.

2. This adversary proceeding arises out of and relates to the above-captioned Chapter 11 case.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding as to which this Court may enter a final judgment under 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(A), (B), (E), (F) and (O).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a), as this adversary proceeding arises under Title 11 or arises under or relates to a case under Title 11 of the United States Code (the "Bankruptcy Code") which is pending in this district.

**PARTIES**

5. The Debtor commenced its Chapter 11 case on December 28, 2008 (the "Petition Date"). The Debtor is a limited liability partnership organized and existing under the laws of the state of California and remains in control and operation of its assets as debtor-in-possession.

6. On or about January 5, 2009, the Committee was formed by appointment of the Office of the United States Trustee. The Committee has standing to bring this action and is authorized to bring this action pursuant to the Order Authorizing The Creditors' Committee to Pursue Certain Estate Causes of Action entered by the Court on April 21, 2009 (the "Estate Representative Order"). Among other things, the Estate Representative Order provides that the Committee is authorized to pursue on behalf of the Debtor's bankruptcy estate the claims asserted herein.

7. The Committee is informed and believes, and on that basis alleges, that BOA is, and at all times relevant herein has been, a national banking association doing business in California.

///

8. The Committee is informed and believes, and on that basis alleges, that Citibank, is, and at all times relevant herein has been, a national banking association doing business in California.

**GENERAL ALLEGATIONS**

9. Since 1991, BOA has been the primary lender, and agent for other lenders, to the Debtor's predecessor law firm and the Debtor. The loan agreements between BOA, the Debtor's predecessor law firm and the Debtor have been restated and amended several times since 1991.

10. As of the Petition Date, BOA, as lender and as agent for itself and for Citibank, was the Debtor's only prepetition consensual secured creditor (hereinafter, unless otherwise stated, all references to BOA shall refer to BOA as lender and as agent for itself, Citibank, and agent for any other lenders under any loans or agreements with the Debtor and all references to Defendants shall include both BOA and Citibank individually and as agent). BOA is the Administrative Agent, Swing Line Lender and Letter of Credit Issuer under that certain Second Amended and Restated Credit Agreement dated as of May 1, 2007, as amended ("Credit Agreement") by and among the Debtor, certain other lenders and Banc of America Securities LLC as Sole Lead Arranger and Sole Book Manager. These parties also entered into and executed various other agreements and documents relating to the Credit Agreement, including a Security Agreement dated as of December 1, 2001 ("Security Agreement"), granting a security interest to BOA, which together with the Credit Agreement are referred to herein as the "Loan Documents."

11. Through the Credit Agreement, the Debtor obtained a revolving line of credit up to the amount of $50 million (the "Line of Credit") and letter of credit commitments of $20 million (the "L/C Commitment"). On July 30, 2008, the parties executed an amendment to the Credit Agreement that, among other things, provided for a term loan of $10 million (the "Term Loan").

12. The Debtor's obligations to BOA under the Loan Documents are purportedly secured by a security interest in and lien upon all or substantially all of the Debtor's personal property, as described in the Security Agreement.

13. BOA initially attempted to perfect its security interest in the assets of the Debtor's law firm by filing a UCC Financing Statement with the California Secretary of State on January 3,

1991 (the "Original Financing Statement"), which was amended and continued by subsequent UCC filings.[1] True copies of the Original Financing Statement, and the various amendments and continuations that were filed with the California Secretary of State (excluding certain attachments such as invoices and purchase orders), are attached hereto collectively as **Exhibit A**.

14. On August 3, 2007, BOA terminated the Original Financing Statement covering the assets of the Debtor, pursuant to a UCC Financing Statement Amendment filed with the California Secretary of State (the "Termination Statement"). A true copy of the Termination Statement is attached hereto as **Exhibit B**. The Termination Statement provided that "[e]ffectiveness of the [Original Financing Statement] is terminated with respect to security interest(s) of the Secured Party authorizing this Termination."

15. On October 1, 2008, just a few days after the Debtor publicly announced the dissolution of its law firm, BOA filed a Financing Statement Amendment ("Correction Statement") to the Original Financing Statement which it had terminated on August 3, 2007. A true copy of the Correction Statement is attached hereto as **Exhibit C**. The Correction Statement states that the Termination Statement "was filed in error and as a result of a clerical error" and purports to revive the Original Financing Statement by contending that it "remains in full force and effect". The Correction Statement further states that "[t]he filing of this Statement does not amend any UCC record. This Statement is for informational purposes only."

16. On October 2, 2008, BOA filed a new UCC Financing Statement to perfect its security interest in the Debtor's assets (the "New Financing Statement"). A true copy of the New Financing Statement is attached hereto as **Exhibit D**.

17. As shown by the attached Exhibits, the Debtor did not execute the Termination Statement, the Correction Statement, or the New Financing Statement. And BOA's filings of the Correction Statement and the New Financing Statement were legally ineffective to revive the Original Financing Statement, which was terminated by the filing of the Termination Statement.

18. During the 90-day period preceding the Petition Date, BOA received approximately

---

[1] The Original Financing Statement was filed against Heller, Ehrman, White & McAuliffe, and the subsequent amendments included name changes and/or changes to the form of business organization.

$51,444,147.66 in payments from the Debtor on account of the Debtor's obligations under the Loan Documents.

19. On December 30, 2008, the Court entered an interim order authorizing the Debtor to use cash collateral (the "Interim Order") which provided for, among other things, the Debtor's post-petition payment to BOA and/or BOA's sweep and application of the Debtor's cash as provided in the Interim Order. The Interim Order expressly stated that any such payments would be provisional.

20. On January 2, 2009, the Debtor paid BOA $1,500,000.

21. On February 18, 2009, the Court entered a final order authorizing the Debtor to use cash collateral (the "Final Order"). The Final Order provided for the Debtor's deposit of $1,700,000 into a segregated debtor-in-possession account (the "Segregated Account") to which the prepetition liens of BOA attached in the same extent, validity, and priority as to which the prepetition liens of BOA attached prepetition. The Final Order further provided that BOA's liens remained subject to any defenses and/or affirmative claims of the Debtor's estate, including, but not limited to, any potential avoidance claims. The Final Order further provided that any payments or cash-collateralization made by the Debtor to BOA post-petition would be deemed made on a provisional basis and without prejudice to the rights of the Debtor's estate to pursue recovery of such payments or cash collateral.

22. On February 25, 2009, the Debtor transferred $1,700,000 to the Segregated Account pursuant to the Final Order.

**First Claim for Relief**
**(Avoidance of Correction Statement and New Financing Statement as Preferential Transfer)**
**11 U.S.C. § 547**

23. The Committee repeats and realleges the allegations in above paragraphs 1 through 22 inclusive, as though fully set forth herein.

24. The filing of the New Financing Statement by BOA to perfect Defendants' security interest in the Debtor's assets was a transfer of an interest of the Debtor in property. To the extent that the filing of the Correction Statement reinstated the Original Financing Statement or otherwise affected the perfection of Defendants' security interest in the Debtor's assets, the filing of the Correction Statement was a transfer of an interest of the Debtor in property. The transfers

referenced in this paragraph are collectively referred to as the ("Perfection Transfer(s)").

25. Defendants were creditors of the Debtor at the time of the Perfection Transfer(s).

26. The Perfection Transfer(s) were made to or for the benefit of Defendants.

27. The Perfection Transfer(s) were made for or on account of an antecedent debt owed by the Debtor to Defendants before the transfers were made.

28. The Perfection Transfer(s) were made while the Debtor was insolvent.

29. The Perfection Transfer(s) were made at the time the Correction Statement and the New Financing Statement were filed with the California Secretary of State's office, which both occurred within the 90 days preceding the Petition Date.

30. The Perfection Transfer(s) enabled Defendants to receive more than they would have received if (i) the case was a case under chapter 7 of the Bankruptcy Code, (ii) the Perfection Transfer(s) had not been made, and (iii) Defendants had received payment on account of such debt to the extent provided by the provisions of the Bankruptcy Code.

31. The Debtor and the Committee are entitled to an order and judgment under 11 U.S.C. § 547 that the Perfection Transfer(s) of the Correction Statement and the New Financing Statement are avoided.

**Second Claim for Relief**
**(Avoidance of Defendants' Security Interest Pursuant to 11 U.S.C. § 544)**

32. The Committee repeats and realleges the allegations in above paragraphs 1 through 31 inclusive, as though fully set forth herein.

33. Section 1107(a) of the Bankruptcy Code grants the Debtor, as debtor-in-possession, those same rights of a trustee serving in the matter under chapter 11, with some exceptions not relevant to this action.

34. Section 544(a) of the Bankruptcy Code vests a trustee with the rights of a hypothetical lien creditor whose lien was perfected at the time of the bankruptcy petition, regardless of any knowledge of the debtor, the trustee, or any creditor. As such, Section 544(a) further allows a trustee to avoid a lien claim of a creditor that does not hold a perfected security interest in a debtor's assets. And the Estate Representative Order authorizes the Committee to bring this action asserting

the rights of the Debtor to avoid such lien claims.

35. The Committee is informed and believes, and based thereon alleges, that the Defendants entered into certain agreements to provide credit to the Debtor as described more particularly in paragraphs 9 through 12 above. The Committee is further informed and believes that the Debtor's agreements with the Defendants included a grant of a security interest.

36. BOA terminated perfection of the Defendants' security interest in the Debtor's assets by filing the Termination Statement prior to the Petition Date.

37. Pursuant to the First Claim for Relief set forth above, BOA's filing of the Correction Statement and the New Financing Statement must be avoided as preferential transfers.

38. As a result of the filing of the Termination Statement, and the avoidance of the Correction Statement and the New Financing Statement, any security interest of the Defendants in the Debtor's assets was unperfected as of the Petition Date. Moreover, by virtue of the foregoing, there was no notice of the Defendants' security interest to a hypothetical lien creditor whose lien was perfected at the time of the bankruptcy petition.

39. Accordingly, the security interest of the Defendants is unenforceable pursuant to California law as against a hypothetical lien creditor whose lien was perfected at the time of the bankruptcy petition.

40. The unperfected security interest, if any, of the Defendants is void as to the Debtor by virtue of 11 U.S.C. § 544.

**Third Claim for Relief**
**(Avoidance of Payments to or for the Benefit of Defendants as Preferential Transfers)**
**11 U.S.C. § 547**

41. The Committee repeats and realleges the allegations in above paragraphs 1 through 40 inclusive, as though fully set forth herein.

42. Within the ninety days immediately prior to the Petition Date, the Debtor made transfers to or for the benefit of Defendants on account of amounts owed under the Credit Agreement in the total sum of $51,444,147.66, plus such other amounts, if any, as may be presented according to proof or subsequently discovered by or disclosed to the Committee as having been

received through an avoidable transfer (the "Avoidable Transfer(s)"). The date and amount of the Avoidable Transfer(s) were on or about the dates as follows:

| Date | Amount |
|---|---|
| 9/30/2008 | $59,545.09 |
| 9/30/2008 | $500,000.00 |
| 9/30/2008 | $535,714.29 |
| 9/30/2008 | $105,333.35 |
| 9/30/2008 | $11,195.18 |
| 10/10/2008 | $1,750,000.00 |
| 10/15/2008 | $106,696.66 |
| 10/16/2008 | $7,000,000.00 |
| 10/21/2008 | $5,000,000.00 |
| 10/21/2008 | $20,833.33 |
| 10/21/2008 | $17,139.34 |
| 10/21/2008 | $21,666.67 |
| 10/21/2008 | $10,836.31 |
| 10/21/2008 | $1,105.09 |
| 10/24/2008 | $4,000,000.00 |
| 10/24/2008 | $100,000.00 |
| 10/27/2008 | $3,000,000.00 |
| 10/29/2008 | $1,000,000.00 |
| 11/1/2008 | $34,921.33 |
| 11/3/2008 | $33,229.16 |
| 11/4/2008 | $1,000,000.00 |
| 11/4/2008 | $3,000,000.00 |
| 11/5/2008 | $107,736.87 |
| 11/7/2008 | $3,000,000.00 |
| 11/12/2008 | $45,000.00 |
| 11/13/2008 | $3,000,000.00 |
| 11/14/2008 | $83,500.00 |
| 11/17/2008 | $1,000,000.00 |
| 11/18/2008 | $1,000,000.00 |
| 11/20/2008 | $1,000,000.00 |
| 11/21/2008 | $54,000.00 |
| 11/25/2008 | $386,998.67 |
| 11/25/2008 | $1,500,000.00 |
| 11/25/2008 | $613,001.33 |
| 11/26/2008 | $1,000,000.00 |
| 12/2/2008 | $3,000,000.00 |
| 12/2/2008 | $26,080.00 |
| 12/3/2008 | $1,500,000.00 |
| 12/3/2008 | $32,155.99 |
| 12/9/2008 | $3,032,776.80 |
| 12/9/2008 | $118,527.20 |
| 12/24/2008 | $1,800,000.00 |
| 12/24/2008 | $36,355.00 |
| 12/24/2008 | $287,254.30 |
| 12/24/2008 | $535,714.17 |
| 12/24/2008 | $976,831.53 |
| **TOTAL** | **$51,444,147.66** |

43. Each of the Avoidable Transfer(s) was made to or for the benefit of Defendants, as creditors of the Debtor, on account of an antecedent debt owed by the Debtor to the Defendants before the Avoidable Transfer(s) were made.

44. The Avoidable Transfer(s) were made while the Debtor was insolvent.

45. The Avoidable Transfer(s) enabled the Defendants to receive more than they would have received if (i) the case was a case under chapter 7 of the Bankruptcy Code, (ii) the Avoidable Transfer(s) had not been made and (iii) the Defendants had received payment on account of such debt to the extent provided by the provisions of the Bankruptcy Code.

46. The Debtor and the Committee are entitled to an order and judgment under 11 U.S.C. § 547, 542, and 550 that each of the Avoidable Transfer(s) is avoided and that the Debtor's estate, and the Committee, is entitled to set aside and recover from Defendants each of the Avoidable Transfer(s) avoided or the value thereof.

**Fourth Claim for Relief**
**(Recovery of Postpetition Transfers - 11 U.S.C. §§ 105 and 549)**

47. The Committee repeats and realleges the allegations in above paragraphs 1 through 46 inclusive, as though fully set forth herein.

48. The Interim Order and the Final Order provisionally authorized (1) the Debtor to pay Defendants postpetition, (2) Defendants' to sweep and apply the Debtor's cash postpetition, and (3) deposit of the Debtor's funds into the Segregated Account subject to provisional liens granted to Defendants (all postpetition transfers, including the provisional liens granted to Defendants and any other postpetition transfers according to proof, are collectively the "Postpetition Transfer(s)"). The Postpetition Transfer(s) were provisionally made or allowed based upon representations that Defendants asserted that they were the Debtor's senior secured lender with a first priority security interest in substantially all of the Debtor's personal property assets, including cash collateral.

49. From and after the Petition Date, the Debtor made transfers of property of the Debtor's estate to or for the benefit of Defendants on account of amounts owed under the Prepetition Credit Agreement, the Loan Documents, and other agreements between the Debtor and the Defendants in the total sum of $6,646,129.89, plus such other amounts, if any, as may be presented

according to proof or as may be subsequently discovered by or disclosed to the Committee as having been received by Defendants through a transfer of property of the Debtor's estate postpetition. The date and amount of Postpetition Transfer(s) made by the Debtor on or after the Petition Date the Postpetition Transfer(s) were on or about the dates as follows:

| Date | Amount |
|---|---|
| 1/2/2009 | $1,500,000.00 |
| 1/16/2009 | $2,254,797.86 |
| 1/16/2009 | $514,963.99 – balance remaining on funds held in a segregated account in the Debtor's name subject to Defendants' lien claims |
| 2/13/2009 | $246,876.98 |
| 3/10/2009 | $429,491.06 |
| 2/25/2009 | $1,700,000.00 – transferred to the Segregated Account subject to Defendants' provisional lien |
| **TOTAL** | **$6,646,129.89** |

50. The Final Order provided that the Defendants' provisional liens attached to the funds in the Segregated Account in the same extent, validity, and priority as to which the prepetition liens of Defendants attached prepetition. The Final Order further provided that Defendants' liens remained subject to any defenses and/or affirmative claims of the Debtor's estate, including, but not limited to, any potential avoidance claims. The Interim and Final Order further provided that any payments or cash-collateralization made by the Debtor to Defendants post-petition would be deemed made on a provisional basis and without prejudice to the rights of the Debtor's estate to pursue recovery of such payments or cash collateral.

51. As of the Petition Date, Defendants did not hold a first priority security interest in any of the Debtor's assets. As alleged above, BOA terminated the Original Financing Statement on August 3, 2007 thereby leaving any security interest of the Defendants unperfected. And BOA's Correction Statement and its New Financing Statement must be avoided pursuant to the First Claim for Relief. Therefore, on the Petition Date, the Defendants did not hold a perfected security interest in the Debtor's personal property and any security interest of the Defendants in the Debtor's assets, including its cash collateral, was junior and subordinate to the interests of the Debtor's estate.

52. In addition, pursuant to the Second Claim for Relief the Defendants' unperfected

security interest in the Debtor's assets must be avoided.

53. Given that the provisional authorization for the payments to Defendants was contingent on the validity of Defendants' security interests, which contingency cannot be met, the Postpetition Transfer(s) were not authorized under the Bankruptcy Code or by the bankruptcy court. Alternatively, the bankruptcy court's provisional authorization for the Postpetition Transfer(s) should be withdrawn or vacated such that that there is no bankruptcy court authorization for any of the Postpetition Transfer(s). And none of the Postpetition Transfer(s) were authorized under the Bankruptcy Code or by the bankruptcy court.

54. None of the Postpetition Transfer(s) should have been made to or for the benefit of Defendants and all cash, liens, or other property of the estate, transferred to or for the benefit of Defendants pursuant to the Postpetition Transfer(s) are subject to avoidance, recovery, turnover, disgorgement.

55. Wherefore, the Debtor and the Committee are entitled to and request an order and judgment pursuant to 11 U.S.C. §§ 105 that (1) each of the Postpetition Transfer(s) is avoided, (2) the Debtor's estate and the Committee are entitled to set aside and recover from Defendants each of the Postpetition Transfer(s) or the value thereof, (3) the Defendants shall turnover and/or disgorge each of the Postpetition Transfer(s) or the value thereof, and (4) the funds held in the Segregated Account shall be released to the Debtor unencumbered by any liens or security interests of Defendants.

56. The Debtor and the Committee are also entitled to an order and judgment under 11 U.S.C. § 549, 542, and 550 that each of the Postpetition Transfer(s) are avoided and that the Debtor's estate, and the Committee, is entitled to set aside and recover from Defendants each of the Postpetition Avoidable Transfer(s) avoided or the value thereof.

**Fifth Claim for Relief**
**(For Recovery of Property – 11 U.S.C. § 550)**

57. The Committee repeats and realleges paragraphs 1 through 56 above as though fully set forth herein.

58. The Avoidable Transfer(s) and/or the Postpetition Transfer(s) (hereafter collectively

referred to as the "Pre and Postpetition Avoidable Transfer(s)") were made for the benefit of the Defendants. As alleged above, the Debtor and the Committee are entitled to avoid the Pre and Postpetition Avoidable Transfer(s) under 11 U.S.C. § 547 and/or 11 U.S.C. § 549.

59. Defendants are the initial transferees of the Pre and Postpetition Avoidable Transfer(s), the intermediate or mediate transferees of each of the Pre and Postpetition Avoidable Transfer(s) and/or the entity for whose benefit the Pre and Postpetition Avoidable Transfer(s) were made. The Debtor and the Committee are entitled to recover for the Debtor's estate the proceeds or value of each of the Pre and Postpetition Avoidable Transfer(s) from the Defendants under 11 U.S.C. § 550.

### Sixth Claim for Relief
(Turnover -11 U.S.C. § 542)

60. The Committee repeats and realleges the allegations in above paragraphs 1 through 59 inclusive, as though fully set forth herein.

61. Pursuant to 11 U.S.C. section 542, the Defendants are required by law to turn over to the Debtor's estate at least the amount of the Pre and Post-Petition Avoidable Transfer(s).

### Seventh Claim for Relief
(To Disallow Any Claim of Defendants Pursuant to 11 U.S.C. § 502(d)
Until Defendants Have Disgorged the Avoidable Transfer(s)
and the Postpetition Transfer(s))

62. The Committee repeats and realleges the allegations in above paragraphs 1 through 61 inclusive, as though fully set forth herein.

63. The Committee is informed and believes, and based thereon alleges, that the Defendants received the benefit of the Avoidable Transfer(s) that constituted preferential transfers pursuant to 11 U.S.C. § 547 and Postpetition Transfer(s) pursuant to 11 U.S.C. § 549, which are recoverable from Defendants under 11 U.S.C. § 550.

64. The Committee is informed and believes, and based thereon alleges, that the Defendants received the benefit of the Postpetition Transfer(s), which are avoidable and/or recoverable from the Defendants.

65. Pursuant to 11 U.S.C. § 502(d), any claim that the Defendants may have against the

Debtor's estate, whether such claims are held jointly, individually, or otherwise, must be disallowed in full unless and until the Defendants have disgorged such Avoidable Transfer(s) and Postpetition Transfer(s) to the Committee or the Debtor.

## RESERVATION OF RIGHTS

Pursuant to this Court's order dated April 21, 2009, and the Memorandum of Decision dated April 2, 2009, the Debtor and the Committee reserve the right to bring all other claims or causes of action that the Debtor or the Committee might have against the Defendants, on any and all grounds, as allowed under the law or in equity. Additionally, neither the Debtor nor the Committee has completed review and analysis of the Defendants' claims. Therefore, nothing contained in this Complaint shall be construed as a waiver of the Debtor's or the Committee's right to object to any proof of claim that has been or may be filed by the Defendants. Accordingly, the Debtor and the Committee reserve the right to object, on any and all grounds, to any proof of claim asserted by Defendants. For such objections to claims, a separate notice will be given and a separate hearing will be schedules.

**WHEREFORE**, the Committee prays for judgment as follows:

1. For a determination that the New Financing Statement is avoidable as a preferential transfer under Section 547 of the Bankruptcy Code and a judgment avoiding the New Financing Statement;

2. For a determination that the Correction Statement is avoidable as a preferential transfer under Section 547 of the Bankruptcy Code and a judgment avoiding the Correction Statement;

3. For a determination that any security interest granted by the Debtor to the Defendants pursuant to the Credit Agreement, the Security Agreement, the Loan Documents, the L/C Commitment, the Term Loan and any other agreements between them is void and that the Defendants have no lien upon, or security interest in, the Debtor's property or assets.

4. For a determination that each of the Avoidable Transfer(s) is avoidable as a preferential transfer under Section 547 of the Bankruptcy Code and a judgment avoiding the

Avoidable Transfer(s), including all preferential transfers from the Debtor to the Defendants according to proof;

5. For a judgment under Section 550 of the Bankruptcy Code granting the Debtor's estate, and the Committee, recovery from Defendants of each of the Pre and Postpetition Avoidable Transfer(s), including all preferential transfers from the Debtor to the Defendants according to proof, avoided or the value thereof;

6. For a judgment awarding recovery from or damages against the Defendants in the amount of the Pre and Postpetition Avoidable Transfer(s), or such other amount as the evidence in this case indicates including the amount, if any, of any additional preferential or postpetition transfers according to proof;

7. For a determination that each of the Postpetition Transfer(s) is voidable and a judgment that (1) each of the Postpetition Transfer(s) is avoided, (2) the Debtor's estate and the Committee are entitled to set aside and recover from Defendants each of the Postpetition Transfer(s) or the value thereof, (3) the Defendants shall turnover and/or disgorge to the Debtor each of the Postpetition Transfer(s) or the value thereof, (4) the funds held in the Segregated Account shall be released to the Debtor unencumbered by any liens or security interests of Defendants; and (5) all such relief also as to any additional transfers from the Debtor to Defendants on or after the Petition Date according to proof.

8. Disallowing any claims the Defendants may have against the Debtor unless the Defendants have disgorged such Pre and Postpetition Avoidable Transfer(s);

9. For costs of suit incurred herein and pre- and post-petition interest against Defendants, to the extent permitted by law;

///

///

///

10. For attorneys' fees and costs incurred by the Debtor and/or the Committee to the extent allowed by any applicable law, contract, or statute; and

11. For such other and further relief as the Court may deem just and proper.

Dated: April 23, 2009

                                         FELDERSTEIN FITZGERALD
                                         WILLOUGHBY & PASCUZZI LLP

                                 By: */s/ Thomas A. Willoughby*
                                       THOMAS A. WILLOUGHBY
                                       Attorneys for The Official Committee
                                       of Unsecured Creditors